STATE OF NEBRASKA, APPELLEE, v. WILLIS PARKER, APPELLANT.
STATE OF NEBRASKA, APPELLEE, v. ARMSTEAD H. PIERCE, APPELLANT.
246 N. W. 2d 210

Filed October 20, 1976. Nos. 40533, 40534.

Bruce G. Mason of Ross & O'Connor, for appellants.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

The defendants, Willis Parker and Armstead H. Pierce, were separately charged with kidnapping and rape. The cases were consolidated for trial in the District Court and were consolidated for briefing and argument in this court. The jury returned verdicts of guilty on all counts and the defendants have appealed.

The offenses were committed on June 1, 1975, before the repeal of section 28-408, R. S. Supp., 1974, became effective.

The prosecuting witness was 18 years of age. She testified that she and her nephew, who was 2 years old, had gone to a grocery store in Omaha, Nebraska. When they arrived at the grocery store it was closed. As they were leaving the parking lot an automobile driven by the defendant Pierce drove into the parking lot and pulled up next to her. While Pierce tried to engage her in conversation, the defendant Parker got out of the car, picked up her nephew, and placed him in the back seat of the automobile. Parker then told her she had to go with them because they had her nephew in the car.

The prosecuting witness entered the front seat of the car and Parker got in the back seat with the nephew. After driving around for a while, Pierce stopped at a liquor store and obtained some wine. He then drove to a house near 28th and Miami Streets, rented by a brother of Pierce, and all four of them went into the house.

The defendants drank some of the wine and smoked some marijuana cigarettes. Pierce asked the prosecuting witness to dance with him so she danced with him for a while. When she tried to leave the house one of the defendants grabbed her and threw her in a chair and threw the nephew on a couch. She fought with the defendants and scratched them, and bit Parker when he tried to kiss her. Finally Pierce took her into the bedroom, pushed her onto the bed, and told her to take her clothes off. When she refused, Parker came into the bedroom and said he would throw her nephew down the stairs if she didn't do what they wanted. Pierce had sexual intercourse with her first and then Parker had sexual intercourse with her. When they had finished the defendants took her to 40th and Pratt Streets.

The prosecuting witness called one of her teachers from a friend's house near 40th and Pratt Streets and asked her to come and get her. When the teacher and her husband arrived the prosecuting witness told them she had been raped, related the details of the offense, and pointed out the house where it had occurred. When she arrived home she told her mother she had been raped and related the details of the offense. The police were called and came to her home where they interviewed her. She was examined at the University of Nebraska Medical Center and sperm was found in her vagina.

The evidence which has been summarized was clearly sufficient, if believed, to sustain the finding of guilty of kidnapping and rape as to each defendant. Under section 28-417, R. R. S. 1943, kidnapping includes unlaw-

ful imprisonment or a holding against the will of the person held for the purpose of compelling the performance of any act by such person. The testimony of the prosecuting witness as to the rape was fully corroborated.

Both defendants testified and admitted they had sexual intercourse with the complaining witness but claimed they used no force and that it was with her consent. Their testimony and the testimony of other witnesses called in their behalf was in conflict with the evidence of the State in many details. The evidence presented questions of fact for the jury which resolved these questions against the defendants. It is not the province of this court to resolve conflicts in the evidence or to weigh the evidence.

The defendants contend the evidence was not sufficient to support the conviction for rape because it failed to show sufficient resistance on the part of the prosecuting witness. The defendants cite Oleson v. State, 11 Neb. 276, 9 N. W. 38.

In the Oleson case this court said that a prosecutrix in possession of her natural mental and physical powers must resist to the extent of her ability unless terrified by threats or in such a position that resistance would be useless. In State v. Campbell, 190 Neb. 22, 206 N. W. 2d 53, we said: "Where resistance would obviously be useless, futile, or foolhardy, it is wholly unrealistic to require affirmative direct demonstration of the utmost physical resistance as proof of the female's opposition and lack of consent. It is only required that the female make reasonable resistance in good faith under all the circumstances, and that the resistance be such as to make nonconsent and actual opposition genuine and real."

Parker and Pierce were 22 or 23 years of age. Although the prosecuting witness had no real possibility of overpowering the defendants, she did struggle with them, biting and scratching when they refused to allow her

to leave the house on Miami Street. Perhaps more importantly, the defendants held the 2-year-old nephew as a hostage and threatened to harm him if the prosecuting witness did not satisfy their demands. The evidence was sufficient to permit the jury to find that the prosecuting witness had made reasonable resistance in good faith under the circumstances of the case.

The other assignment of error relates to the fact that the defendants were represented by the same attorney at the trial. The defendants contend they were denied effective assistance of counsel because their defense involved conflicting interests.

There was no objection made in the trial court to the consolidation of the cases for trial or to the representation of both defendants by one lawyer.

The claim of a conflict in interest is based, primarily, upon a pretrial statement by Pierce to the police in which Pierce stated that no one was with him when he was with the prosecuting witness. Pierce admitted on direct examination that the statement was untrue and said that he had made the statement in an effort to protect Parker, his cousin, who was married.

The statement was not prejudicial to Parker because he admitted that he had sexual intercourse with the prosecuting witness. The issue was consent, not whether Parker had participated in the offense. There was no conflict of interest which prevented Parker from having a fair trial.

The judgments are affirmed.

AFFIRMED.